IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| LLOYD MICHAEL HAMILTON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 6:22-cv-00001 |
| | § | |
| CONOCOPHILLIPS COMPANY AND | § | |
| BURLINGTON RESOURCES OIL | § | |
| & GAS COMPANY LP, | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' AMENDED RULE 12(b)(6) MOTION TO DISMISS**

Defendants are re-filing their Rule 12(b)(6) motion (Docket No. 8) as an amended motion because Plaintiff filed an amended complaint (Docket No. 10).

This lawsuit is Plaintiff's second bite at the apple. Seventeen months ago, Plaintiff initiated an unsuccessful action in state court intending to prevent ConocoPhillips Company and Burlington Resources Oil and Gas Company LP (collectively, "Defendants") from constructing a well pad in an area of Plaintiff's ranch where they were authorized by lease to do so. When that case was removed, Plaintiff made a concerted—and successful—effort to stay out of this Court, expressly disavowing and dismissing any claims alleging violations of the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA"), associated with the purported presence of jaguarundis on the ranch.

Having failed in state court, Plaintiff now belatedly invokes the ESA in this Court seeking to penalize Defendants for lawfully constructing the well pad and to prevent them from drilling wells on the pad. Defendants do not concede that jaguarundis are present in the area, and the Court

may take judicial notice of the fact that the Texas Parks and Wildlife Department has declared the Gulf Coast jaguarundi extinct in Texas, with the last confirmed sighting having occurred in Brownsville in 1986.[1]

### Argument Summary

In September 2020, Plaintiff sued these same Defendants in state court, seeking to stop Defendants' construction and operation of a well pad pursuant to an oil and gas lease. Plaintiff originally alleged that Defendants breached duties owed to him under the ESA. Defendants removed the case to this Court. Seemingly to avoid this Court's exercise of jurisdiction, Plaintiff unilaterally dismissed all of his claims that were premised on violations of the ESA. Based on Plaintiff's actions, this Court remanded the case to state court, where Plaintiff proceeded to trial on the same facts and alleging the same harms, but without asserting ESA claims. He lost. The doctrine of *res judicata* bars Plaintiff from now relitigating the issue of whether Defendants can lawfully construct and operate wells on his land in light of the alleged presence of jaguarundis. This suit should be dismissed.

### Statement of Facts

Plaintiff owns the surface estate of a 530-acre tract in DeWitt County, Texas, along with an undivided interest in the mineral estate. Order, *Hamilton v. ConocoPhillips Co., et al.*, Case No. 6:20-cv-59 (S.D. Tex. Oct. 23, 2020), at 2. In 2007, Plaintiff, among others, leased the mineral interests to Hawke Enterprises, which subsequently assigned the lease to Defendants. *Id*.

---

[1] *See* Texas Parks and Wildlife Department, *Jaguarundi (Herpailurus Yaguarondi)*, available at https://tpwd.texas.gov/huntwild/wild/species/jag/ (last visited Feb. 6, 2022). According to the U.S. Fish and Wildlife Service, the jaguarundi is known to or believed to occur in Texas, but not in DeWitt County, which is where Plaintiff's property is. https://ecos.fws.gov/ecp/species/3945.

In 2020, Defendants were preparing to construct a 12-acre well pad on a portion of the property.  Plaintiff's First Amended Complaint ("Amend. Comp."), Docket No. 10 at ¶ 81.  On September 11, 2020, Plaintiff sent the U.S. Fish and Wildlife Service ("FWS" or "Service") and Defendants a notice of his intent to file suit under the ESA to enjoin Defendants' planned well construction and related activities.  *See* Amend. Comp. at ¶ 39; Plaintiff's State Court Original Petition, *Hamilton v. ConocoPhillips Co., et al.*, Case No. 20-09-25, 236 (Dewitt Cty. Dist. Ct., Tex. Sept. 11, 2020) (Exh. A).  (Defendants ask the Court to take judicial notice of the public records filed as exhibits to this motion.  A court may consider matters of public record when ruling on a motion to dismiss.  *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).)

On the same day, Plaintiff filed an action against Defendants in state district court in DeWitt County seeking a temporary restraining order, preliminary injunction, and permanent injunction.  Exh. A. at ¶ 34.  Plaintiff's original state court petition included negligence claims premised on alleged ESA violations.  *Id.* at ¶¶ 22–24 (asserting claims based on an alleged breach of duties owed to Plaintiff under the ESA and citing "warnings" from FWS that Defendants' conduct would jeopardize jaguarundis and their habitat).  Plaintiff stated in the petition that "to pursue every possible avenue for relief," he intended to file a citizen suit in federal court after the required 60-day waiting period under the ESA had passed.  *Id.* at ¶ 16 n.1.

Defendants removed the case to this Court on the basis of the ESA-related claims. Defendants' Notice of Removal, *Hamilton v. ConocoPhillips Co., et al.*, Case No. 6:20-cv-00059 (S.D. Tex. Sept. 22, 2020) (Exh. B).  Plaintiff then voluntarily dismissed these claims and moved for remand claiming there were no longer any federal law issues in the case.  Plaintiff's Notice of Dismissal, *Hamilton v. ConocoPhillips Co., et al.*, Case No. 6:20-cv-00059 (S.D. Tex. Sept. 22,

2020) (Exh. C); Plaintiff's Motion to Remand, *Hamilton v. ConocoPhillips Co., et al.*, Case No. 6:20-cv-00059 (S.D. Tex. Sept. 22, 2020) (Exh. D), at ¶ 15.

In their opposition to remand, Defendants said:

> We suggest that the Court proceed as follows: (1) Deny the motion to remand and the TRO request; (2) stay the case until after November 8, 2020, being sixty days after Plaintiff submitted his Notice of Intent to Sue under the ESA; and (3) grant Plaintiff leave to amend his complaint after November 8, 2020 to allow him to assert an explicit ESA claim.

Defendants' Response in Opposition to Plaintiff's Motion to Remand (Exh. E). The Court remanded the case to state court.

Plaintiff chose not to amend his petition to add specific ESA claims once the 60-day notice period under the ESA had expired, despite his previous statement to the state court that he would file ESA claims when able to do so. Exh. A at p. 7 n. 1.

Trial on Plaintiffs' claims began on April 12, 2021 and lasted approximately three weeks. Partial Judgment, *Hamilton v. ConocoPhillips Co., et al.*, Case No. 20-09-25, 236 (Dewitt Cty. Dist. Ct., Tex. June 28, 2021), at 1 (Exh. F). On June 28, 2021, the state court rendered judgment against Plaintiff on all of his claims, accepting the jury's unanimous verdict finding no violation of the accommodation doctrine arising out of the same well pad construction and future drilling that are at issue in this case. *Id.*; Verdict, *Hamilton v. ConocoPhillips Co., et al.*, Case No. 20-09-25, 236 (Dewitt Cty. Dist. Ct., Tex. Apr. 28, 2021) (Exh. G).

As a prelude to the state court litigation, Defendants had received correspondence from an FWS field supervisor regarding the Defendants' planned activities. On July 29, 2020, the field supervisor expressed concerns about the potential impact of the proposed activities on Gulf Coast jaguarundis, which are an ESA-listed endangered species. Amend. Comp. at ¶ 74 and Exh. 1.

4889-9712-3089 v.2                                  4

Defendants then relocated the well pad site to a portion of the property across a road and 100 yards away from the area the FWS field supervisor had indicated constituted optimal habitat. *Id*. at Exh. 2. Defendants began well pad construction activities that took place outside of the November/December period identified by the Service as peak jaguarundi reproductive season. *Id*. at ¶ 81.

The FWS field supervisor sent Defendants another letter on September 3, 2020 (a copy of which was also attached to Plaintiff's state court petition). *Id*. at Exh. 2. The letter expressed appreciation for Defendants' willingness to relocate the proposed well pad and stated the field supervisor believes that the new well pad location was "not far enough" from the thorn scrub habitat to avoid "potential harm" to jaguarundis and other wildlife from Defendants' activities. *Id*. By the time Defendants received the September 2020 letter, they had largely constructed the well pad. *Id*. at Exh. 2.

## **Motion to Dismiss Standard**

A case is properly dismissed when the court lacks the statutory or constitutional power to adjudicate the case. *Montgomery v. U.S. Army Corps of Engineers*, 128 F. Supp. 2d 433, 435 (S.D. Tex. 2001). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level." *Id*. (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Gonzalez*, 577 F.3d at 603 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

**Argument**

**The Doctrine of *Res Judicata* Bars Relitigation of Whether Defendants Can Operate Facilities on the Ranch Pursuant to Their Lease.**

The Court should dismiss Plaintiff's First Amended Complaint. Plaintiff raised certain ESA-related claims and had the opportunity to raise additional ESA claims in past litigation concerning Defendants' activities. He expressly disavowed his ESA-related negligence claims to secure remand and then chose not to raise additional ESA claims while litigating in state court. Nothing prevented him from litigating these claims in his prior action. Thus, the doctrine of *res judicata*, or claim preclusion, prevents Plaintiff from now seeking to relitigate the same issue, *i.e.*, whether Defendants' construction and future operational activities violated or will violate the law.

*Res judicata* "precludes the relitigation of claims which have been fully adjudicated or arise from the same subject matter, and that could have been litigated in the prior action." *Palmer v. Fed. Home Loan Mortg. Corp.*, No. 4:13-cv-430, 2013 WL 2367794, at *2 (N.D. Tex. May 30, 2013) (citing *Nilsen v. City of Moss Point*, 701 F.2d 556, 561 (5th Cir. 1983)). For example, it "prevents a plaintiff from abandoning claims and subsequently asserting them when the claims could have been litigated in the prior suit." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). This doctrine exists to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). As the Fifth Circuit has stated, "Plaintiffs are not given a second chance to prove their claims; they must do it right the first time." *Cervantes v. Ocwen Loan Servicing, L.L.C.*, 749 F. App'x 242, 245 (5th Cir. 2018).

The U.S. Supreme Court has held that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

Under Texas state law, *res judicata* applies when: "(1) there was a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of the parties or those in privity with them exists between the two actions, and (3) the second action is based on the same claims as were raised or could have been raised in the first action." *Caro v. City of Dallas*, No. 3:15-CV-1210-L, 2016 WL 397084, at *4 (N.D. Tex. Feb. 1, 2016). All three elements of the *res judicata* test are satisfied here.

        **a.**    **There was a prior final judgment on the merits by a court of competent jurisdiction.**

Plaintiff has admitted that there is a final judgment in his state court lawsuit. Plaintiff's Reply in Support of Emergency Motion for Temporary Restraining Order (Docket No. 19) ("the judgment in the state court case was made final").

        **b.**    **Plaintiff is in privity with himself and does not represent the federal government.**

        **i.**    **The ESA itself contradicts Plaintiff's privity theory.**

The ESA's citizen suit provision explicitly provides that a person "commence[s] a civil suit on his own behalf." 16 U.S.C. § 1540(g)(1). Nowhere in the ESA or any ESA case law is there any support for Plaintiff's assertion that he comes before this Court "in a representative capacity, representing the interests of the federal government." Plaintiff's Emergency Motion (Docket No. 11), at ¶ 69. More importantly, courts have specifically rejected this kind of argument in other citizen suit cases by noting that only the federal government can represent the interests of the federal government. *See Sierra Club v. Oklahoma Gas & Elec. Co.*, 816 F.3d 666, 676 (10th Cir. 2016) ("Sierra Club is not the government, regardless of how it views its own role"). In that case, the court held that a similar citizen's suit provision under the Clean Air Act that likewise authorizes a citizen to commence a suit "on his own behalf" does not authorize private plaintiffs

"to represent the public at large in the same way the government does when it brings suit to enforce the statute." *Id.*

The flaw in Plaintiff's argument is further highlighted by the fact that the same subsection of the ESA also authorizes Plaintiff, if he chose to do so, to file a citizen suit against the Secretary of the U.S. Department of the Interior. 16 U.S.C. §§ 1540(g)(1)(B), 1540(g)(1)(C). It would be absurd to contend that Plaintiff, in suing the federal government, represents the federal government. When Congress wants to authorize a person to represent the interests of the federal government, it knows how to do so. *See* 28 U.S.C. § 517 (authorizing the Solicitor General or any other U.S. Department of Justice officer "to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."). Nothing in the ESA's citizen suit provision grants Plaintiff the ability to represent any interests beyond his own.

    ii.  *Gracia v. RC Cola* **does not support Plaintiff's privity theory.**

In *Gracia v. RC Cola-7-Up Bottling Co.*, the plaintiff appeared "only in a representative capacity as next friend of her minor daughter." 667 S.W.2d 517, 519 (Tex. 1984). The court plainly stated that the "real party plaintiff [was] the child and not the next friend" and therefore found *res judicata* did not bar Mrs. Gracia's own claims.

   c.  **This case arises out of the same subject matter as the previous state court case.**

To determine whether the second action is based on the same claims as were raised or could have been raised in the first action, courts in the Texas and the Fifth Circuit apply the transactional test. *Caro*, 2016 WL 397084, at *4. "Under the transactional test, [the] inquiry focuses on whether the two cases under consideration are based on the same nucleus of operative facts." *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (citations and quotation marks omitted). "The

nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim." *Id.* (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994). The Fifth Circuit has stated that what constitutes a "transaction" is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 396 (5th Cir. 2004) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2)). As stated by the Texas Supreme Court, "A subsequent suit will be barred if it arises out of the *same subject matter* of a previous suit and which through the exercise of diligence, *could have* been litigated in a prior suit." *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992) (emphasis added).

Both the prior state court litigation and the current suit arise out of the same nucleus of operative facts—those related to the alleged presence of jaguarundis in the vicinity of the well pad, Defendants' activities on land pursuant to their mineral lease rights, and the extent to which these activities and any jaguarundis (assuming they are present) can co-exist. In the state court litigation, the issue of co-existence was framed as whether Defendants, in proceeding with well pad construction, had properly accommodated Plaintiff's purported use of his property as a "sanctuary" for jaguarundis (*i.e.*, whether the construction of the well pad in the location selected by Defendants would disturb the alleged jaguarundis). Defendants' Closing Argument Transcript, *Hamilton v. ConocoPhillips Co., et al.*, Case No. 20-09-25, 236 (Dewitt Cty. Dist. Ct., Tex. Apr. 28, 2021), at 70 (Exh. H).

In the current litigation, the issue is framed as whether Defendants' activities harmed or harassed jaguarundis within the meaning of the ESA and whether future activities on the well pad

will harm or harass jaguarundis. While addressed through different legal constructs, the factual inquiries in both cases are the same and require the same evidence. *See Hall v. United States*, No. CIV.A. 6:06-CV-528, 2008 WL 276397, at *6 (E.D. Tex. Jan. 30, 2008) (*res judicata* barred plaintiff's second complaint "rehashing the same arguments and causes of action under different headings").

For example, the state court proceeding featured testimony from the same hunters Plaintiff relies on in this case—their claims that in past years they saw animals that they believe to have been jaguarundis in the general area of the well pad location. Amend. Comp. at ¶¶ 67–72. The state court proceedings also included testimony from the expert who Defendants retained to conduct a survey and investigate claims regarding the presence of jaguarundis, as well as testimony from Plaintiff's jaguarundi expert, both of whom would undoubtedly testify regarding the same issues in this case if it is allowed to proceed. *See* Exh. A at 25; Exh. H at 66–67, 75. In addition, the FWS field supervisor's correspondence to Defendants was attached to both the original state court petition and the Amended Complaint here. Moreover, Defendants' activities have not substantively changed since the state court rendered judgment on the verdict in the already-litigated case. In both cases, the same site and same future activities are involved, as well as the same alleged past and future harm to the alleged jaguarundis. Therefore, both cases arise out of the same nucleus of operative facts.

### d. Plaintiff could have raised ESA claims in the prior litigation but chose not to.

Even if the state court action and the current action were not considered to arise out of the same nucleus of operative facts, the claims Plaintiff now makes certainly could have been raised as part of the original action if Plaintiff had chosen to do so. The ESA requires a 60-day notice to the Secretary of the Interior, as well as to the person allegedly in violation of the statute, before

filing a claim.  16 U.S.C. § 1540(g)(2)(A).  Plaintiff provided this notice to the relevant parties by letter dated September 8, 2020.  Thus, Plaintiff could have filed ESA claims against the Defendants in this Court in early November 2020, which would likely have resulted in the removal of the state court litigation to federal court and its consolidation with the ESA claims.  Alternatively, Plaintiff could simply have accepted federal court jurisdiction over his state law claims in the first instance and subsequently amended his complaint to add ESA claims.  Instead, Plaintiff elected to first disavow and later not assert any ESA claims until *after* he lost in state court.

The addition of ESA claims to already-filed litigation to accommodate the running of the required 60-day notice period is common.  For example, in *Alliance for the Wild Rockies v. U.S. Department of Agriculture*, the plaintiff sent a 60-day notice letter to FWS addressing the decision of various federal and state agencies to permit low-level helicopter flights to control the migration of bison herds and expressing concern about the impact of the flights on grizzly bears.  A week later, the plaintiff filed suit alleging violations of the National Forest Management Act and the National Environmental Policy Act.  When the 60-day notice period expired, the plaintiff amended its complaint to add a claim alleging a violation of the ESA.  The Ninth Circuit held that the plaintiff could file suit before the expiration of the 60 days and then amend its complaint to include ESA claims after the 60-day notice period expired without running afoul of the ESA's citizen suit notice requirements.  772 F.3d 592, 603 (9th Cir. 2014).

The Fifth Circuit has likewise noted that Plaintiff could have brought ESA claims even after originally filing suit before the expiration of the 60-day period.  *See Lockett v. EPA*, 319 F.3d 678, 682 (5th Cir. 2003) (ESA's 60-day notice requirement is "more procedural than jurisdictional"); *Caro*, 2016 WL 397084, at *9 (noting that "Rule 63 of the Texas Rules of Civil Procedure liberally allows a party to amend her pleadings as late as seven days before trial").

Thus, if Plaintiff had really wanted to do everything he could to protect the jaguarundis he claims are present on his property—which he characterizes as a "treasure for our citizens"—in the light of this allegedly "major moment," Amend. Comp. at ¶¶ 46, 206, he could have accepted federal jurisdiction and amended his complaint to include ESA counts when the notice period expired. In fact, when Plaintiff filed his state court complaint, he stated that "to pursue every possible avenue for relief" he intended to file an ESA claim in federal court when he was able to do so and would seek to involve the FWS in the suit. Exh. A, at 7 n.1.

Instead, Plaintiff actively thwarted federal court jurisdiction by dismissing—after his lawsuit was removed to this Court—his claims that were premised on violations of the ESA. Plaintiff proceeded to litigate his case in state court without invoking ESA claims. Nevertheless, the parties fully litigated all of the core factual issues that were central to the state court case and that serve as the foundation for this case, *i.e.*, whether jaguarundis are present in the vicinity of the well pad and, if so, whether Defendants can conduct their activities in a manner consistent with their presence. Now, after waiting nearly a year since the conclusion of the previous case, Plaintiff wants to revive legal theories that he could have raised in the fall of 2020—but instead expressly disavowed—to relitigate the lawfulness of Defendants' activities. He should not be allowed to do so. *See Caro*, 2016 WL 397084, at *10 (*res judicata* barred plaintiff's federal claims from being heard in federal court when she failed to raise them in a prior state court proceeding, despite the fact that procedural requirements for one of the federal claims prevented plaintiff from asserting it when she first filed suit); *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992) ("A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit.").

Any present jaguarundis are not without remedy. If FWS determines that Defendants' proposed activities would likely result in a take of jaguarundis in violation of the ESA, it may choose to engage in further discussions with Defendants toward an agreement to safeguard their well-being, or it may file an ESA claim against Defendants. *See* 16 U.S.C. § 1540(a)(1).

Plaintiff does nothing to counter Defendants' argument that Plaintiff could have remained in this Court to raise his ESA claims, thereby conserving judicial resources rather than thwarting this Court's jurisdiction. See Plaintiff's Emergency Motion (Docket No. 11), at ¶ 68. The case law cited by Plaintiff—which assumes a plaintiff never had an opportunity to assert federal claims in federal court—is simply not on point. Those cases do not speak to a situation like the one at hand, where a plaintiff was in a court that could have heard the ESA claims he told the court he planned to assert, but then decided to consume precious judicial time and resources to get his case remanded back to a state court that he knew could not hear those claims. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 647–48 (Tex. 1996) (case never left state court); *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 747–49 (Tex. 2017) (case never left state court); *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F. Supp. 2d 781, 784–86 (E.D. Tex. 2000) (involving a case that never left state court).

Thus, this Court should not devote scarce judicial resources to adjudicating a claim that (a) Plaintiff could have brought over a year ago as part of related litigation, and (b) the operative facts of which have already been tried. If this case is allowed to go forward, Defendants would be forced to relitigate issues concerning the alleged presence of jaguarundis and the impacts of their past and proposed activities in a new forum, an outcome that the doctrine of *res judicata* is designed to prevent. Plaintiff's belated ESA claims should be dismissed.

      **e.**    **Additional argument for dismissal.**

Additional argument for why Plaintiff's Amended Complaint should be dismissed on *res judicata* grounds is set out in Defendants' oral argument in opposition to Plaintiff's Emergency Motion (Docket No. 11), which was heard by the Court on Friday, February 25, 2022.

## Conclusion

Because *res judicata* bars Plaintiff's claims, Plaintiff has not stated a claim upon which relief can be granted. The Court should therefore dismiss the Amended Complaint against Defendants with prejudice.

                                                              Respectfully submitted,

                                                 */s/ Michael J. Mazzone*
                                               Michael J. Mazzone
Federal I.d. No. 4267
State Bar No. 13313000
michael.mazzone@haynesboone.com
1221 McKinney, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2115
Facsimile: (713) 236-5662

ATTORNEY-IN-CHARGE FOR DEFENDANTS CONOCOPHILLIPS CO. AND BURLINGTON RESOURCES OIL & GAS CO. LP

OF COUNSEL:

Baker Botts, LLP
Scott Janoe
Federal I.D. No. 27577
Texas Bar No. 24012897
910 Louisiana Street
Suite 3200
Houston, Texas 77002
Scott.janoe@bakerbotts.com

Cullen, Carsner, Seerden & Cullen LLP
Kevin D. Cullen
Federal I.D. No. 957
State Bar No. 05208625
119 S. Main Street
Victoria, Texas 77901
Telephone 361-573-6318
Kcullen@cullenlawfirm.com
HAYNES BOONE, LLP

Mini Kapoor
Federal I.D. No. 1692359
Texas Bar No. 24080969
Julia Peebles
Federal I.D. No. 3350745
Texas Bar No. 24096131
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone (713) 547-2261
Facsimile   (713) 236-5664
Mini.kapoor@haynesboone.com
Julia.peebles@haynesboone.com

## CERTIFICATE OF WORD COUNT

I hereby certify the word count to be 4,269 words.

                                                     */s/ Michael J. Mazzone*
                                                 Michael J. Mazzone

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served upon the following counsel of record in accordance with the Federal Rules of Civil Procedure on this 1st day of March 2022:

Jeffery Mundy
Fed Id No. 10632
Texas Bar No. 14665575
jeff@jmundy.com
The Mundy Firm PLLC
4131 Spicewood Spring Road, Suite O3
Austin, Texas  78759
Telephone:  (512) 334-4300
Facsimile:  (512) 590-8673

Charles Irvine
Texas Bar No. 24055716
Irvine & Conner PLLC
4709 Austin St.
Houston, Texas  77004
Telephone:  (713) 524-1012
Facsimile:  (713) 524-4165
charles@irvineconner.com

Robert B. Dubose
Federal Bar No. 16763
Texas Bar No. 00787396
rdubose@adjtlaw.com
Alexander Dubose & Jefferson LLP
1844 Harvard Street
Houston, Texas  77008
Telephone:  (713) 523-2358
Facsimile: (713) 522-4553

                                        */s/ Michael J. Mazzone*
                                        Michael J. Mazzone